418

Rufina Acosta, etc., Plaintiff and Appellee, *v.* Aurora Rosado, Defendant and Appellant.

No. 7504. Argued December 13, 1938.—Decided March 9, 1939.

*R. Padró Parés* for appellant. *José C. Jusino* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

Rufina Acosta was appointed judicial administratrix of the property left by her husband Máximo Marrero. As such she filed a suit against her mother-in-law and the spouses

Sergio Dávila and Rita Agrait. She alleged as a cause of action: That she and her husband Máximo Marrero were the owners of a house situated on a lot which they had bought on installments from José L. Pesquera and that before the lot was entirely paid for, plaintiff and her husband mortgaged the property to guarantee $700 in favor of José Ramos Pérez by deed of February 8, 1928. That when they finished paying for the lot Mr. Pesquera was ready to give them title, but at Máximo's request, to defend himself from any economical crisis in his business, as he put it, the deed of purchase of the lot was executed in the name of his brother Faustino Marrero, the true owners of the property being the plaintiff and her husband. That at the beginning of the year 1929 Máximo Marrero agreed with Sebastiana Amador to exchange said house and lot for a farm belonging to her minor children; that when the deed of conveyance was to be made, at Máximo's suggestion, Faustino appeared in the deed as owner of the house and lot, and in acquiring the farm, following Máximo's instructions, by the same deed he conveyed the title to Aurora Rosado, their mother, without any consideration, for the same reasons which had induced him formerly to convey the title of the lot bought from Mr. Pesquera to Faustino. That when Máximo died, defendant as well as the rest of the family accepted that the farm in question belonged to Máximo and they did not sell said farm until they had plaintiff's consent. Plaintiff consented that said farm be sold to Sergio Dávila and his wife Rita Agrait by deed No. 54 of December 22, 1932, before notary Rafael Muñoz Ramos, in order to pay certain debts of the inheritance. That in payment of part of the purchase price Sergio Dávila delivered to the vendor Aurora Rosado, in whose name the farm appeared, a check in the amount of $1211 on the Banco Comercial de Puerto Rico, Bayamón branch. That when this check was presented for payment, it could not be collected because said bank had been placed under judicial administration. That the contracting parties then agreed that Dávila should execute

a mortgage in favor of the vendor on the farm sold. The mortgage was executed but it could not be recorded in the Registry of Property because before it was presented therein, Sergio Dávila and his wife had sold the property to Daría Agrait widow of Carbonell, who in turn had sold it to a third party who did not know of the lien in favor of Aurora Rosado. On March 30, 1933, plaintiff applied to the District Court of Bayamón for the judicial administration of the goods left by her husband Máximo Marrero and as Aurora Rosado denied that the aforesaid credit of $1,211 belonged to the estate of Máximo Marrero, plantiff was not able to include said credit in the inventory of decedent's property. That notwithstanding the fact that Sergio Dávila knew that the mortgage credit of $1,211 belonged to the estate of Máximo Marrero and not to his mother Aurora Rosado, he intended to pay it to the latter since the mortgage in question had been executed in her favor.

She ends the complaint with a prayer that judgment be entered holding that the heirs of Máximo Marrero are the owners of said credit and that payment be made to plaintiff as judicial administratrix, and that she be authorized in her said capacity to execute the necessary deed to cancel the mortgage; that in case said credit has been fully or partially paid to Aurora Rosado, the latter be ordered to return whatever she has collected, with interest at the rate stipulated in the mortgage deed, and that it be ordered that the defendants who oppose the complaint be made to pay the costs, expenses and attorney's fees.

Defendant Aurora Rosado appeared and filed a motion requesting that certain parts of the complaint be stricken out but before the question raised by the motion to strike had been decided, plaintiff, on April 5, 1934, amended her complaint as follows: she eliminated from same defendants Sergio Dávila and Rita Agrait; she alleged that her husband Máximo Marrero died intestate on August 5, 1929, without descendants, and that therefore his only and universal heirs

are his mother, defendant Aurora Rosado, and his widow, plaintiff herein. She repeated the facts formerly alleged in the original complaint and stated that on June 15, 1933, that is, two days before the filing of the original complaint, Aurora Rosado received from Sergio Dávila the full amount of the credit of $1,211, which she refused to deliver to the judicial administratrix of the property of Máximo Marrero, and that she likewise refused to account to plaintiff for the part of said sum belonging to her as ganancials.

She changed the prayer of the complaint in the following manner: That the defendant be ordered to pay to the judicial administratrix of Máximo Marrero the amount of $1,211 with the corresponding legal interest or to pay to plaintiff the amount of $605.50 which belonged to her as her half of the ganancials in said credit, with interests, costs, expenses and attorney's fees.

Defendant, on April 16, 1934, filed a motion in which she prayed that the amended bill of complaint be stricken out because permission was not obtained to file it and because it was, according to defendant, a new bill of complaint (she evidently meant to say a new cause of action) against parties different from those who appeared in the original complaint. The court dismissed the motion to strike the amended bill of complaint on November 21, 1935, and gave defendant ten days to plead. On the 27th of the following December, defendant filed a "Motion for Inspection", in which she prayed that plaintiff be ordered to place at the disposal of defendant or of her attorney through the clerk of the court, the deeds by virtue of which plantiff acquired the title or right which she alleged on the credit and that she be permitted to take said deeds with her and copy them. On January 2, 1936, the Court issued an order denying the "Motion to inspect" and on the 11th of said month defendant filed a motion to strike certain particulars from the amended bill of complaint. This motion was also denied on March 20, 1936, and on the said order defendant was given ten days "to file her answer."

She did not answer but demurred to the complaint on March 30, 1936, on the ground that it did not allege sufficient facts to constitute a good cause of action. The demurrer was dismissed on April 7, 1936, and she was given a new term of ten days to answer the complaint, which she did on April 28, 1936.

In her answer defendant admitted the fact that plaintiff was the judicial administratrix of the goods left by Máximo Marrero but she denied for lack of sufficient information that plaintiff and defendant were the only and universal heirs of Máximo Marrero, because defendant was not in a position to aver that Máximo Marrero did not have any natural children with a right to inherit from him. She also denied the other allegations of the verified complaint and as special defenses she reinstated her demurrer which had been previously dismissed and further alleged that defendant, when she became a widow, went into business, which brought her income whereby she was able to deal in real property, although due to her lack of experience she always went to one of her children for advice, and that the properties which she acquired and to which the complaint refers were bought by defendant with her own money and for her own benefit and that her son Máximo Marrero had no interest whatsoever in any of them.

The hearing was held on October 14, 1936, both parties being present, and on January 11, 1937, judgment was rendered on the complaint, ordering defendant Aurora Rosado to pay plaintiff, Rufina Acosta, as judicial administratrix of the estate of Máximo Marrero, the amount of $1,211, plus legal interest from the date of the filing of the complaint, to wit, June 17, 1935, until payment in full had been made. Defendant was also ordered to pay the costs and attorney's fees, which were set by the judgment in the sum of $200.

Defendant appealed to this court and in the brief which was filed on November 29, 1938, she assigned six errors. At the end of her brief she waived the last of the errors because

she believed it to be included in the previous five. The assignment of errors is as follows:

"1. The District Court of Bayamón erred in dimissing the motion to strike the amended bill of complaint.

"2. The lower court erred in dismissing the demurrer to the bill of complaint.

"3. The lower court erred in admitting in evidence a mortgage deed executed by Máximo Marrero in favor of José Ramos on a house and lot to prove Máximo Marrero's title, and it also erred in admitting the testimony of José Ramos in regard to the contents of said deed.

"4. The lower court erred in holding that the testimony of José L. Pesquera proved beyong doubt that he had made but one sale of a lot to Máximo Marrero and that the lot is the one described in the complaint.

"5. The District Court erred in weighing the evidence in finding it sufficiently clear and strong to destroy the presumption of truth of the public document on which defendant's title rests.

"6. The District Court erred in rendering judgment in this case since the judgment is contrary to the law and is not sustained by the degree of proof required by law and jurisprudence."

The court acted correctly in dismissing the motion to strike the amended complaint. When plaintiff filed the original complaint it seems that she did not know that the spouses Sergio Dávila and Rita Agrait had already paid defendant Aurora Rosado the $1,211 credit. Acting on this belief the spouses Dávila-Agrait were necessary parties so that they could be ordered by the judgment to pay the credit to plaintiff and not to their codefendant Aurora Rosado. Before the motion to strike filed by defendant against the original complaint was decided plaintiff exercised her right to file an amended complaint without having obtained permission of the court under section 139 of the Code of Civil Procedure. She did not need said permission to file the new complaint. The fact that defendants Sergio Dávila and Rita Agrait were eliminated from the amended bill of complaint does not change the original cause of action filed against them

and Aurora Rosado. This is not a case in which one defendant is substituted by another. *Melón Hnos. & Co.* v. *Muñiz de León,* 47 P.R.R. ____. The purpose of the original complaint, as well as that of the amended complaint was to recover for the judicial administratrix of the estate of the deceased Máximo Marrero the credit which plaintiff originally believed was owed by the spouses Sergio Dávila and Rita Agrait, but which turned out to have been paid to Aurora Rosado before the original complaint was filed.

■ The appellant alleges that the amended complaint does not allege sufficient facts to state a cause of action, because said defendant is "a third party in due course in the eyes of the law", and because plaintiff does not allege that she acquired the farm of 14 *cuerdas* "by fraud and without any consideration nor consent of the vendor Faustino Marrero."

From paragraphs 3 and 4 of the amended complaint it can be reasonably inferred that Aurora Rosado was but an instrument used by Máximo Marrero to conceal a title which he acquired by barter. Said paragraphs read as follows:

"3. That at the time of the exchange the property appeared in the name of Faustino Marrero, Máximo Marrero' brother. That on acquiring the property Faustino Marrero, who as has been said before had no interest in said transaction, conveyed to his mother Aurora Rosado the property received by him from Amador.

"4. That the manner in which Máximo Marrero substituted other persons for himself, without any consideration, in said exchange transaction, was one of so many acts carried out in such manner by him. This was done, according to him, to prevent any possible crisis in his business and in order that his family, who were and are insolvent, should have credit in order to help him in his business. That this was done very often by Máximo Marrero against the wishes of his wife, plaintiff herein."

The defendant herself so understood when she alleged in her answer that she acquired the farm with her own money and that Máximo Marrero had no interest whatsoever in same. (Paragraph *C* of the special defenses.) But assuming that

it was not alleged in the amended complaint that defendant acquired the property without any consideration, said defect in the complaint was cured by the evidence as we shall see further on. *D'Azizi* v. *Alcaraz,* 40 P.R.R. 468; *Dávila* v. *P.R. Ry. L. & P. Co.,* 44 P.R.R. 923; *Guijarro* v. *Lluberas,* 50 P.R.R. ____.

■ In her third assignment of error appellant avers that the court received in evidence the mortgage deed which Máximo Marrero and his wife, plaintiff herein, executed in favor of José Ramos Pérez to secure the amount of $700 on the house and lot which plaintiff alleges that her husband acquired by purchase from José L. Pesquera. The credit of $1,211 object of this suit originated from transactions with said house and lot. We agree with appellant that the fact that a person executes a mortgage on a property is not conclusive evidence that he is actually the owner of said property, since it is possible to sell or to mortgage goods of another, but a transaction of this kind is evidence of acts of ownership which together with the rest of plaintiff's evidence tends to show that Máximo Marrero and his wife and not Faustino Marrero were the owners of the property in question.

■ In order to avoid unnecessary repetitions, we will discuss the fourth and fifth errors together, since they are very closely related.

From the evidence it appears that when plaintiff and Máximo Marrero were sweethearts, the latter built a house in Bayamón and that while it was being built he took her to see it at different times, so that she was able to know the workmen who were building it. That later they were married and the house was rented by Máximo. That Máximo and plaintiff executed a mortgage on the house and lot in favor of José Ramos Pérez, that said mortgage could not be recorded because the title of the lot, which had been purchased on the installment plan, had not been given to Máximo Marrero as yet. That the latter was in the habit of putting his prop-

erties in the name of his family, saying that he did so to avoid any difficulty that he might have in business. That he finished paying José L. Pesquera for the lot and when his wife thought he would bring the deed to the lot in his name, he informed her that he had ordered the title to be conveyed to his brother Faustino, following his aforementioned habit. As to this matter, José L. Pesquera testified that he purchased a farm from Mrs. Parkhurst, she being a widow; that Mr. Parkhurst had sold certain lots of said farm and that when he, Pesquera, bought it, he also acquired the rights that Mrs. Parkhurst had in said contracts. That among the lots sold on the installment plan there was one in the name of Juan María Rosado marked number 1055 on the improvement plan. That when the lot was paid for, Juan María Rosado and Máximo Marrero came to his house and the former told him to execute the deed to the lot in the name of Máximo Marrero, but that when he was going to convey the title at Máximo's request the lot was transferred to his brother Faustino Marrero.

In answer to plaintiff's questions, Mr. Pesquera stated that he did not remember having made any sale of lots to Faustino Marrero, that he believed he had not made such a sale although he did not want to state this as a fact without looking up his records. Plaintiff then requested the court to allow Mr. Pesquera to look up his records, to which defendant objected. The court granted plaintiff's motion making the following ruling:

"The court grants the motion and requests the witness to make an effort to enable him as soon as possible to answer any question that may be propounded to him in regard to what he has testified."

Defendant took exception and the witness retired. Both parties continued presenting their evidence and finally rested and the witness Pesquera did not return to the court.

When the lot was in the name of Faustino Marrero, Máximo agreed with Sebastiana Amador to exchange the

house and lot for a farm belonging to her minor children. She testified that she never had anything to do with Faustino Marrero nor with Aurora Rosado, but solely with Máximo Marrero. Sebastiana Amador obtained the necessary judicial authorization and when the exchange was carried out, at Máximo's instructions Faustino transferred to his mother Aurora Rosado, by the same deed, the title to the farm which he thereby acquired.

Notwithstanding the fact that the title to the farm was in Aurora Rosado's name, Máximo worked it and put witness Domingo Andino Rodríguez in charge of it. Said witness lived in said farm since it had belonged to Sebastiana Amador's children. Máximo and Andino entered into a contract to plant sugar cane and during the last two years of Máximo's life, Andino received instructions directly from him as sole owner. The sugar cane planted by Andino was liqui- dated upon being cut and delivered to the *Central,* and the amount corresponding to Máximo was paid to Rufina Acosta. Andino also testified that he never received any orders from Aurora Rosado nor from any other person.

After Máximo Marrero's death and with the consent of his widow Rufina Acosta, Aurora Rosado, the defendant, sold the farm to Sergio Dávila and his wife Rita Agrait in order to pay certain debts of the deceased. The farm was subject to a mortgage in favor of the Federal Land Bank of Baltimore payment of which was undertaken by the purchaser, and after the taxes and notarial expenses were deducted, the amount received by the vendor was reduced to $1,211, for which sum Sergio Dávila gave defendant a check on the Banco Comercial de Puerto Rico, Bayamón branch. When this check was presented, it turned out that the Bank was in the hands of a receiver and the check could not be cashed. For this reason Sergio Dávila agreed to execute a mortgage on said property for the aforesaid amount, and this is the credit which has been the subject of this suit.

When these transactions were being made, Rufina Acosta, plaintiff herein, was on good terms with her husband's relatives and therefore there was no difficulty among them in regard to money matters. Later they disagreed, Rufina Acosta was appointed judicial administratrix of the goods left by Máximo, and when she tried to include in the inventory of property the aforesaid credit, defendant Aurora Rosado alleged that she was its sole owner. As Sergio Dávila was willing to pay Aurora Rosado said credit, because all the documents were in her name, the original complaint in this case was filed. Later the amended bill of complaint was filed when plaintiff learned that the credit had been paid to defendant.

From Rufina Acosta's testimony it appears that she and her husband Máximo Marrero went to pay certain installments of the mortgage of the Federal Land Bank of Baltimore in San Juan.

The deeds referred to were presented in evidence and plaintiff rested.

Defendant's evidence consisted in the testimony of Aurora Rosado, who testified that after she became a widow she had various businesses, a small store, a café and others of like nature and that with the money that she made in these enterprises she was able to pay the farm. That she sold eggs, chickens and she brought beef to sell in San Juan, but that her children had thrown away her money and that she had to support six children, daughters-in-law and grandchildren, all of whom she supported with her small business. It does not appear, however, that Máximo lived with her, but it does appear that Faustino lived with her and that she helped to support his children, and the daughter-in-law to which defendant refers was not Rufina Acosta, who, as appears from the evidence, lived with her husband Máximo Marrero since their wedding. In regard to the purchase and payment of the farm from Faustino, the following dialogue was had by plaintiff's attorney and defendant:

"Q. How much did you pay for said farm?

"A. To Faustino, $2,500.

"Q. Where did you deliver these $2,500 to your son?

"A. I may have paid part in cash and part in a mortgage.

"Q. Where did you pay the $2,500?

"A. To Faustino?

"Q. Where, in what place, in what building?

"A. It must have been in my home, because Faustino Marrero . . . he has been ill and I have spent my own money, in doctor, medicines and a lot of other things; and also he owes me among other things the payment of the house.

"Q. Was the payment made in your house?

"A. Yes, sir.

"Q. Now, tell me, how many payments were made, if there was more than one?

"A. Did not I tell you? Faustino was ill; I cured him; I took a doctor to him, bought medicines and what with one thing and another and the money that I had given him, the amount and more which he owes me was covered.

"Q. In other words, you paid him the money in different services which you did for him, in different payments that you made to the doctor and for medicines?

"A. Yes, sir."

As can be seen from the part of the testimony of Aurora Rosado which we have quoted, she first testified that she paid Faustino $2,500 for the farm, part in cash and part in a mortgage credit. Nevertheless, further on (record, 117), when she was asked how many payments she made to Faustino, she testified that he became ill and that she paid the purchase price in fees to the doctor, medicines and cash which she gave him.

It is strange and it considerably weakens defendant's case, that notwithstanding the fact that Faustino was living with defendant, he did not testify, since he could have done so with more knowledge and exactness than his mother, due to her old age and her ignorance. It is also strange that Guadalupe Marrero, defendant's daughter, who appears from the evidence to be an intelligent woman, since she kept her

mother's accounts and represented her in her business transactions, has not testified either.

Section 102 of the Evidence Act in its relevant part states as follows:

"All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions and may be controverted by other evidence. The following are of that kind:

". . . . . . . . . .

"5. That evidence wilfully suppressed would be adverse if produced.

". . . . . . . . ."

This court, in the case of *Méndez* v. *González*, 47 P.R.R. ____, by its Associate Justice Mr. Wolf said as follows:

"It is likewise a very significant matter in the case, that although Cecilio Méndez was present at the trial he did not take the witness stand and Aldarondo was never called as a witness. This is the suppression of evidence to which paragraph 5 of section 102 of the Law of Evidence relates."

The lower court who saw and heard the witnesses testify, believed plaintiff's evidence and it appears that it did not believe defendant's testimony, notwithstanding the deeds in which Faustino Marrero and Aurora Rosado appeared as owners of the aforementioned farm. We agree with the lower court that these two, Faustino and Aurora, were not the true owners of said farm and that the same belonged to Máximo Marrero.

The fact that Mr. Pesquera might have sold some other lot to Faustino Marrero does in no way alter the decision of this case. He testified without hesitation that the title to the lot in question, which is situated on Ferrer and Guardia streets, was turned over to Faustino at Máximo's request. Said lot was known by Rufina Acosta since before her marriage, it being the same one on which the house which she saw built stands, and was the one exchanged for the farm of Sebastiana Amador's minor children. Therefore, there is no

controversy in regard to the identity of the lot. If Pesquera's testimony was mistaken, why did not the defendant deny it? If as defendant suggests without trying to prove it, Faustino Marrero had bought another lot from Mr. Pesquera, who would have been in a better position than Faustino to prove it? Nevertheless, he did not even try to do so, even though the suit was against his mother and he lived in her company.

We believe that the lower court did not commit any error in the weighing of the evidence, notwithstanding the jurisprudence of this court in the cases of *Ríos* v. *Amorós,* 27 P.R.R. 735; *Cruz* v. *López,* 17 P.R.R. 40; *Cortijo* v. *Orta,* 46 P.R.R. ____; *Delgado* v. *Villamil,* 41 P.R.R. 568; and *Hernández* v. *Fernández,* 17 P.R.R. 103, which hold that in case of doubt, the contents of a public deed should prevail. We hold that the lower court correctly decided the conflict and that the weight of the evidence is strongly in plaintiff's favor.

For the foregoing reasons, the appeal should be dismissed and the judgment appealed from affirmed.

Mr. Chief Justice Del Toro took no part in the decision of this case.